Argued and submitted May 31, reversed and remanded September 28, 2016

Kathleen M. JOHNSON,
*Petitioner-Respondent,*

*v.*

John S. CAPTAIN, III,
*Respondent-Appellant.*

Harney County Circuit Court
1409418AB; A159123

384 P3d 532

Mark Kramer argued the cause for appellant. With him on the brief was Kramer & Associates.

Christine N. Moore waived appearance for respondent.

Before Armstrong, Presiding Judge, and Egan, Judge, and Shorr, Judge.

**SHORR, J.**

Petitioner sought and received a temporary restraining order in the trial court against respondent pursuant to the Elderly Persons and Persons With Disabilities Abuse Prevention Act (EPPDAPA), ORS 124.005 to 124.040. Respondent appeals from the entry of that order. He argues, among other things, that the court erred by denying him the opportunity to question or cross-examine, directly or indirectly, the only witness against him, petitioner.[1] We agree and reverse and remand for further proceedings.

The particulars of the parties' relationship and dispute are mostly immaterial to our discussion of the legal issue presented. The facts below are drawn from the record. As relevant, respondent sent voluminous emails to petitioner, the content and quantity of which petitioner considered threatening. Petitioner sought, and received, a restraining order in an *ex parte* hearing, as provided for in ORS 124.020(1). Respondent requested a hearing to contest the restraining order, which was held over two days. We more fully discuss the facts of those proceedings in the course of our analysis below. As relevant, respondent, who was not represented by counsel in the trial court, appeared telephonically for the hearing and advised the court that he had a friend with him who would "try to help me understand" as the hearing proceeded. At the outset of the hearing, the trial court announced that it did not "let the parties ask questions of each other." Instead, following petitioner's presentation of her case, it would allow respondent "the opportunity to respond then, and as time allows, we'll go back and forth maybe even a couple times to respond to those issues." Respondent did not object to that announcement, nor did respondent assert his right to cross-examine petitioner. However, at various points in the proceeding, respondent raised questions relating to petitioner's testimony and evidence, which the court addressed without either allowing respondent to ask petitioner those questions directly or passing any of those questions on to petitioner for her to respond.

---

[1] As required by ORAP 5.15, the parties are referred to by their designations in the trial court; thus, appellant is referred to as "respondent," and respondent on appeal is referred to as "petitioner."

At the conclusion of the hearing, the trial court issued an order upholding the original restraining order.

On appeal, respondent raises several arguments.[2] We address only his contention that the trial court violated respondent's right to due process under the Fourteenth Amendment to the United States Constitution[3] by denying him the opportunity to cross-examine or question petitioner. Respondent acknowledges that he did not "formally complain" to the trial court at the court's announcement that the parties would not be allowed to question each other. Respondent nevertheless argues that comments he made later in the proceeding were sufficient to preserve the issue. Respondent also urges that, if we conclude that the argument is not preserved, we should nevertheless correct the alleged error under plain error review. *See* ORAP 5.45(1). We conclude without discussion that respondent's arguments are not preserved. However, as we explain below, we also conclude that the trial court committed plain error, and we exercise our discretion to correct it.

ORAP 5.45(1) provides that, even if an error is unpreserved, "the appellate court may consider an error of law apparent on the record." We conduct our plain-error analysis in two steps. *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 381-82, 823 P2d 956 (1991). First, the error must be "apparent on the face of the record." *Id.* at 381. Second, even if the court did commit error, we must also decide to exercise our discretion to reach the error. *Id.* at 382.

We start at the first step. For an error to be "apparent on the face of the record," the claimed error must (1) be an error of law, (2) be "apparent, *i.e.*, the point must be obvious, not reasonably in dispute," and (3) "appear on the face of the record, *i.e.*, the reviewing court must not need to go outside the record to identify the error or choose between competing inferences, and the facts constituting the error must be irrefutable." *Ailes*, 312 Or at 381-82 (internal quotation marks omitted).

---

[2] Petitioner does not appear on appeal.

[3] The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." Although respondent raises a federal constitutional question, as discussed below, we resolve this case based on subconstitutional grounds under the Oregon Evidence Code.

Here, the trial court made an error of law. On multiple occasions and in different contexts, the Oregon Supreme Court and our court have reversed trial court rulings where a party was denied the opportunity to cross-examine an adverse witness.

In *State v. Hovies*, 320 Or 414, 419, 887 P2d 347 (1994), the defendant challenged a traffic citation for an obstructed window. The officer who issued the citation testified, but the trial court refused to allow the defendant, who was not represented by counsel, to cross-examine the officer. *Id.* at 416. On review, the Supreme Court concluded that the Oregon Evidence Code established the right to cross-examination, and that the trial court committed reversible error by denying the defendant that right. *Id.* at 418-19, 421. The court noted that Oregon's civil rules of evidence apply in a traffic-infraction proceeding, and that those rules grant a trial court discretion to "limit the right of cross-examination to the scope of direct examination and matters affecting credibility," but do not give it "the statutory power to extinguish that right altogether." *Id.* at 419; *see also State v. Halsey*, 116 Or App 225, 226, 840 P2d 730 (1992) (reversing traffic infraction because defendant was denied opportunity to cross-examine officer; stating that a "trial court has some power to regulate cross-examination * * *, but it does not have the power wholly to deny the right to cross-examine").

The right to cross-examination has been affirmed in civil proceedings as well. In *Howell-Hooyman and Hooyman*, 113 Or App 548, 550-51, 833 P2d 328 (1992), the trial court interrupted and cut short an unrepresented husband's cross-examination of his wife in a domestic relations case, and summarily ended the proceeding. On appeal, we held that, by denying the husband "the opportunity to complete his cross-examination and to present his case-in-chief," the trial court had abused its discretion and committed reversible error. *Howell-Hooyman*, 113 Or App at 551. We explained:

> "A trial court, in the exercise of sound discretion, has the authority reasonably to control the presentation of evidence and the examination of witnesses. OEC 611(1). The exercise of that authority is reasonable only if it is fundamentally

fair and allows opportunities for a reasonably complete presentation of evidence and argument."

*Id.*

In *Hemingway and Mauer*, 247 Or App 603, 605, 270 P3d 375 (2012), a husband appearing without counsel to challenge a restraining order issued against him under the Family Abuse Prevention Act was denied the opportunity to cross-examine a witness who gave adverse testimony. On appeal, we concluded that the trial court had abused its discretion, and stated that "[t]he lack of a 'fundamentally fair' hearing allowing husband 'a reasonably complete presentation of evidence and argument' is apparent." *Id.* at 607 (quoting *Howell-Hooyman*, 113 Or App at 551); *see also Miller v. Leighty*, 158 Or App 218, 222, 973 P2d 920 (1999) (reversing trial court's entry of permanent stalking protective order because the trial court did not "afford[] respondent an opportunity to cross-examine adverse witnesses, including petitioner, [or] to present his own evidence"); *cf. Decker v. Klapatch*, 275 Or App 992, 998, 365 P3d 1169 (2015) (in a hearing for an EPPDAPA restraining order, trial court abused its discretion by denying petitioner's motion to continue, which petitioner requested so that he could present his only witness).

Each of the preceding cases appears to have been decided on statutory, not constitutional, grounds. *See, e.g., Hovies*, 320 Or at 417 (explaining that the Supreme Court "decides cases on subconstitutional grounds, where available, before reaching constitutional issues," and that, "although defendant's arguments focus on constitutional requirements, we first turn to the relevant statutes to determine whether they accord to defendant the right that he claims"). Together, they stand for the proposition that, in a proceeding subject to the Oregon Evidence Code, a trial court has some discretion to control cross-examination, "but it does not have the power wholly to deny the right to cross-examine." *Halsey*, 116 Or App at 226. To deny that right is legal error.

We also note that, while respondent raised a constitutional challenge under the Fourteenth Amendment, we

conclude that, as in *Hovies*, we need not reach the constitutional question here because "relevant statutes * * * accord to defendant the right that he claims." *Hovies*, 320 Or at 417. A hearing to challenge a restraining order issued under EPPDAPA is subject to the Oregon Evidence Code. *See* ORS 40.015 ("The Oregon Evidence Code applies generally to civil actions, suits and proceedings, criminal actions and proceedings and to contempt proceedings except those in which the court may act summarily."). A hearing under EPPDAPA is also subject to specific guidance in ORS 124.020(9)(d), which states that, in conducting a contested restraining order hearing under EPPDAPA, "[t]he court shall exercise its discretion in a manner that protects the elderly person or person with a disability from traumatic confrontation with the respondent." That statutory guidance, however, does not augment or expand a trial court's discretion such that it may totally deny a party the opportunity to cross-examine or even indirectly question a witness, particularly here where, as we note later in this opinion, the trial court stated that both parties were "very appropriate in court."

Having concluded that the denial of the right to cross-examine or question petitioner was legal error, we consider whether the error is "apparent"—that is, "obvious, not reasonably in dispute"—and whether the error is evident "on the face of the record." *Ailes*, 312 Or at 381. We conclude that, on both questions, it is.

The trial court began the hearing by explaining to the parties the basic rules and procedures that would govern the proceeding. In so doing, the trial court explained that the parties would not be allowed to question each other, but would have the chance "to respond" to the other's testimony. At the opening of the first day of the hearing, the trial court said, "I don't let the parties ask questions of each other, but I'll give you, [respondent], the opportunity to respond then, and as time allows, we'll go back and forth maybe even a couple times to respond to those issues." The court repeated those rules at the start of the second day of the hearing. "I'm going to go to you, [petitioner], for anything additional that you want to say. * * * And then, [respondent], I will go to you for any response that you have to any of the Petitioner's * * *

evidence." The court then emphasized that "[o]ne side will speak and I'll make sure the other side has a full opportunity to respond."

After petitioner submitted as evidence emails that respondent had sent her, and provided testimony on the concerns that brought her to request the restraining order, the trial court turned to respondent and told him that "[t]his is your opportunity to respond," and asked, "Is there any evidence that you want to put under oath?" Respondent then proceeded to address the trial court and, on several occasions, raised questions related to petitioner's testimony. For example, respondent asked when any alleged abuse had begun, whether that alleged abuse began before or after a particular email was sent, and "why did she continue to contact me, including threaten me, with lawsuits." At one point, respondent attempted to challenge prior testimony by petitioner that she had "blocked" his emails. Respondent told the court that he, in fact, had "blocked her," and then, directly to petitioner, said, "I blocked you." Respondent then asked the court directly: "Can we take a second to find that for you, please?"

Following each question, the trial court either endeavored to answer the respondent itself, or pointed respondent to the email evidence that petitioner had submitted. At no point during the proceedings did the trial court pose a question to petitioner on behalf of respondent. Nor did the trial court invite respondent to pose questions that it would then pose to petitioner. Instead, the trial court offered respondent opportunities "to respond," to make "any statements that you want to make at this point," and to submit evidence.

We recognize that a trial court has the discretion to control the presentation of evidence, including cross-examination, and, in the context of EPPDAPA, that discretion should be exercised to protect a vulnerable petitioner from "traumatic confrontation." ORS 124.020(9)(d). In the case of an abusive or confrontational party, that discretion might allow for strict control over questioning. However, the facts of this case do not require us to decide just how much control a court is afforded under those circumstances. Here,

the trial court explicitly commended the parties for having "both been very appropriate in court," and the record indicates that respondent, who appeared by telephone, was not confrontational or abusive.

In light of the above, we conclude that it is apparent on the record that the trial court denied respondent the opportunity to cross-examine petitioner. The trial court explicitly told respondent that he was not allowed to ask questions of petitioner. Instead, the trial court provided respondent only the opportunity to present evidence and "to respond" to petitioner's allegations by addressing the trial court, but never petitioner. What questions respondent did raise regarding petitioner's testimony were never posed to petitioner, either directly or through the trial court. In sum, the denial of the right to cross-examination is not reasonably in dispute and is ascertainable from the facts in the record.[4]

We turn, then, to the second step of our plain-error analysis—whether to exercise our discretion to reach the error.

> "[I]n deciding whether to exercise its discretion to consider an error of law apparent of the face of the record, among the factors that a court may consider are: the competing interests of the parties; the nature of the case; the gravity of the error; the ends of justice in the particular case; how the error came to the court's attention; and whether

---

[4] We note that, in *Bryant v. Walker*, 190 Or App 253, 257-59, 78 P3d 148 (2003), *rev dismissed*, 337 Or 585 (2004), we reached the opposite conclusion on similar facts—but with one critical distinction. In *Bryant*, a respondent appealed from the entry of a stalking protection order (SPO), arguing that the trial court had plainly erred by not allowing him to cross-examine the petitioner, or to be heard. *Id.* at 257-58. After the petitioner had presented her testimony and evidence at the hearing, the trial court asked the respondent for his response, and he briefly addressed the trial court. *Id.* at 258. The petitioner then presented additional evidence, and the trial court asked, "Anything further?" The petitioner responded, "No," and the trial court granted the SPO. *Id.* We concluded that "the alleged error [was] not apparent on the face of the record" because the transcript supported an inference that the respondent "was not deprived of his opportunity to present his case and cross-examine petitioner"; rather, "[h]e had the opportunity and did not take it." *Id.* at 259. The difference in the present case is that the trial court explicitly prohibited respondent from asking questions of petitioner, which amounted to a wholesale denial of the right to cross-examine an adverse witness that is "apparent on the record." ORAP 5.45(1).

the policies behind the general rule requiring preservation of error have been served in the case in another way, *i.e.*, whether the trial court was, in some manner, presented with both sides of the issue and given an opportunity to correct any error. Those factors do not comprise a necessary or complete checklist; they merely are some of the permissible considerations."

*Ailes*, 312 Or at 382 n 6 (citations omitted).

Here, we elect to exercise our discretion for the following reasons. First, the "gravity of the error" is significant. The right to cross-examine is fundamental to a fair judicial proceeding. *See Best v. Tavenner*, 189 Or 46, 53, 218 P2d 471 (1950) ("It is axiomatic that a party against whom a witness is called has the right to cross-examine the [witness]."); *Jones v. Siladic*, 52 Or App 807, 813, 629 P2d 875, *rev den*, 291 Or 662 (1981) ("The opportunity [for] cross-examination is an essential safeguard of the accuracy and completeness of testimony, and it is a right and not a mere privilege."). Additionally, the record in this case indicates that this was not a simple oversight by the trial court; the trial court announced as a rule for the proceeding that the parties were prohibited from questioning each other. Second, in considering the competing interests of the parties and the nature of the case, the additional burden on the trial court's resources is not so significant here as to outweigh respondent's important interest in his right to cross-examine the only witness against him.

In sum, the trial court erred by entirely prohibiting respondent from questioning or cross-examining petitioner. The trial court's blanket prohibition prevented direct questions and even appropriate questions presented through the trial court. That error was plain, and we exercise our discretion to correct it.

Reversed and remanded.